## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**EXAMWORKS, LLC,**

    **Plaintiff,**                     **CASE NO.**

**v.**

**NAHLA RIZKALLAH,**

    **Defendant.**

_____/

### VERIFIED COMPLAINT AND DEMAND FOR
### PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff EXAMWORKS, LLC., ("Plaintiff" or "ExamWorks"), by and through its undersigned counsel, hereby brings this action against Defendant NAHLA RIZKALLAH ("Defendant" or "Rizkallah") and seeks a temporary restraining order and injunctive relief. ExamWorks is informed and believes, and based thereon alleges, as follows:

### PARTIES

1.     At all times mentioned herein, Plaintiff was and is a limited liability company organized under the laws of the State of Florida with its principal place of business in Atlanta, Georgia.

2.     At all times mentioned herein, and to the best of Plaintiff's knowledge, Defendant was and is a resident of Florida residing in Sarasota, Florida.

## JURISDICTION AND VENUE

3.     ExamWorks' headquarters is located in Atlanta, Georgia. All contractual agreements at issue in this lawsuit are subject to Florida law, including Rizkallah's Confidentiality and Non-Competition Agreement.

4.     The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as ExamWorks' claims arise under federal law, including the Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*) ("DTSA").

5.     This Court has supplemental jurisdiction over any related state law claims in this dispute pursuant to 28 U.S.C. § 1367 because the claims are substantially related to ExamWorks' federal claims.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Rizkallah resides in this judicial district and a substantial part of the events giving rise to the claims at issue occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A.     ExamWorks' Business**

7.     ExamWorks provides Medicare services to insurance and medical providers and is a leading provider of independent medical examination, peer reviews, Medicare compliance, record retrieval, document management, and related services.

8.     ExamWorks Compliance Solutions, LLC ("ECS") is a department within ExamWorks that provides Medicare set-asides, Medicare Secondary Payer ("MSP") services, and Medicare Section 111 reporting support.

9.     ExamWorks has invested significant resources, time, and money into research, business development, market analysis, marketing and advertising, and relationship building with current and potential customers.

10.     ECS has developed and maintains confidential, proprietary, and trade secret information including customer lists, potential customer lists, risk analysis formulas, sales pitches, private customer information, including personal health information, training manuals and handbooks, and more.

11.     If this proprietary, confidential, and trade secret information was provided to a competitor or was used by Rizkallah to compete with or impair or interfere with ExamWorks' business, it would cause irreparable harm to the business interests, reputation, and goodwill of ExamWorks.

**B.     Rizkallah's Employment with ExamWorks**

12.     In 2014 ExamWorks acquired Rizkallah's previous employer, Gould & Lamb.

13.     Rizkallah worked as a pharmacist for Gould & Lamb and, as a condition of her employment, signed a Confidentiality and Non-Competition Agreement (the "Agreement"). A true and correct copy of Rizkallah's Agreement is attached as **Exhibit A**.

14.     Rizkallah's employment, including her obligations under the Agreement, transferred to ExamWorks on or about February 3, 2014, in connection with ExamWorks' acquisition of Gould & Lamb.  *See* **Exhibit A** at ¶ 18.

15.    As a Senior Clinical Pharmacist, Rizkallah was primarily responsible for Medicare mitigation. She reviewed cases of individual patients and determined what could be done within the requirements and parameters of Medicare to reduce costs for insurance and medical providers. After making such determinations, she would communicate potential cost-saving solutions to the applicable treating physicians. In that role, Rizkallah had access to customer lists, customers' patients' confidential health information, reports, white papers, presentations, risk analysis formulas, business strategies, and other private, confidential, proprietary information, and trade secrets belonging to ExamWorks.

16.    Relevant here, the Agreement includes a confidentiality provision that reads in relevant part as follows: "Employee covenants and agrees not, at any time during the term hereof of thereafter, to publish, copy, reproduce, disclose, divulge or use any private, confidential or proprietary information of the Company's acquired by Employee in the course of [her] employment with the Company." **Exhibit A** at ⁋ 4.a.

17.    "Private, confidential, or proprietary information" is defined in the Agreement as "information which is owned or controlled by the Company, has been treated by the Company as confidential and which has not be [sic] publicly released or has not otherwise become common knowledge." *Id.*

18.    Examples of "private, confidential, or proprietary information" include, but are not limited to:

> Financial information, service cost data, pricing information, revenue and profit margins, client lists, referral sources, demographic client information, confidential records, patient records, prospective and existing expansion programs, methods, programs, materials, processes, training materials and manuals, designs of programs, computer software, proposals, schedules, systems performance objectives and criteria, analyses of areas of development, joint venture and/or affiliate agreements, business systems and marketing methods, techniques, technical know-how, drawings and data, and all intra-office business affairs, and developments and personnel information such as salaries, job assignment and skills.

**Exhibit A ¶ 4**

19.     Rizkallah agreed and acknowledged that "irreparable injury will result to the Company in the event Employee violates any of the terms of this Agreement." *Id.* ¶ 9.

20.     Rizkallah further agreed that "upon breach of any of said covenants, the Company shall be entitled, in addition to any other remedies and damages available, to an injunction and to restrain the violation of any terms of this Agreement by Employee subject to the requirements imposed by law." *Id.* She also understood and agreed that "the amount of actual damages suffered the Company may be difficult to ascertain precisely, and therefore, agrees that Company will be entitled to $10,000.00 as liquidated damages for each separate breach or violation of Employee." *Id.* In addition, she agreed that these liquidated damages "are not punitive in nature but represent a true and fair approximation of actual damages." *Id.*

21.     The Agreement "inure[s] to the benefit of the Company, its successors and assigns," *i.e.*, ExamWorks. *Id.* ¶ 18.

22.     In addition to the foregoing, Rizkallah agreed that "in any dispute arising from, or concerning, the interpretation and/or enforcement and/or validity/reasonableness of the terms of the Confidentiality and Non-Competition Agreement or of any other employment related, or occurring as a result of the employment relationship between Employee and [ExamWorks], said dispute may, in the sole discretion of [ExamWorks], be resolved by binding arbitration[.]" *Id.* ¶ 22. In this case, ExamWorks elects to seek resolution of this matter through the instant lawsuit rather than by binding arbitration.

**C.     Rizkallah's Removal of Trade Secrets and Other Confidential and Proprietary Information**

23.     On or about December 31, 2024, Rizkallah submitted her resignation to ExamWorks, stating her final day of employment would be January 14, 2025.

24.     However, Rizkallah informed her supervisor on January 9, 2025, that her last day would instead be January 10, 2025, due to alleged personal issues involving her father.

25.     Sometime between December 31, 2024, and January 10, 2025, Rizkallah removed numerous documents and files containing private, confidential, and proprietary information, and trade secrets from her work computer, including documents that had previously resided in a folder on her virtual desktop. ExamWorks discovered this when Rizkallah's direct supervisor, Lori Dickson ("Dickson") searched for these documents and files in order to transition Rizkallah's work to other ExamWorks employees, but they could not be found. ExamWorks' policy is to retain

confidential documents and files on its employees' virtual desktops and it is not the Company's practice to have its employees delete such confidential documents and files prior to their separation of employment, like Rizkallah did, in an apparent effort to hide her actions.

26. Consequently, ExamWorks searched Rizkallah's work email in an effort to discover what had happened to the missing documents that contained private, confidential, and proprietary information, and trade secrets.

27. ExamWorks discovered that between January 2 and 10, 2025, Rizkallah had emailed herself (to a personal Hotmail email address) numerous of the company's documents and files containing private, confidential, and proprietary information, and trade secrets, including, but not limited to, customer lists, customers' patients' confidential health information, reports, presentations, risk analysis formulas, business strategies, and other private, confidential and proprietary information. Indeed, over the course of her final eight days of employment at ExamWorks, and knowing full-well that she was leaving the Company, Rizkallah sent herself over 100 emails containing the company's documents and files for which she had no legitimate need or use.

28. Absent the Court's intervention, ExamWorks has no way to force Rizkallah to return and/or delete the private, confidential, and proprietary information, and trade secrets that Rizkallah has improperly published, copied, reproduced, disclosed, divulged, and/or used, and which she acquired in the course of her employment with ExamWorks.

29. Left unchecked, further publishing, copying, reproducing, disclosing, divulging, and/or use of ExamWorks' trade secrets, and private, confidential and proprietary information – whether for Rizkallah's own benefit, or for the benefit of one of ExamWorks' direct competitors in the Medicare industry – will cause ExamWorks irreparable harm for which there is no adequate remedy at law.

30. Rizkallah's conduct is a breach of her Agreement as well as a violation of the Federal Defend Trade Secrets Act and Florida's Uniform Trade Secrets Act. This unlawful conduct has and will continue to severely and negatively impact ExamWorks' legitimate business interests. ExamWorks, therefore, seeks a temporary restraining order and other injunctive relief against Rizkallah to prevent further irreparable harm from occurring for which there is no adequate remedy at law.

31. Rizkallah's brazen act of stealing ExamWorks' private, confidential, and proprietary information, and trade secrets, has left ExamWorks no choice but to file this lawsuit seeking, among other remedies, immediate and permanent injunctive relief to prevent further irreparable harm to ExamWorks' reputation, goodwill, and other legitimate business interests.

## FIRST CLAIM FOR RELIEF
### (Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*,)

32. The allegations set forth in Paragraphs 7–31 are incorporated by reference as though fully set forth herein.

33. The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to

a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1832, *et seq.*

34.    "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information."

35.    ExamWorks owns and possesses certain confidential, proprietary, and trade secret information, as alleged and described above. This confidential, proprietary, and trade secret information relates to services that are used, sold and/or ordered in, or that are intended to be used, sold, and/or ordered in, interstate or foreign commerce.

36.    ExamWorks derives independent economic value from the fact that its private, confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. ExamWorks has taken, and continues to take, reasonable measures to keep that information secret and confidential. These measures include, but are not limited to, password-protecting this information, limiting the dissemination of information to certain employees, promulgating policies governing access to, and the handling and use of such information, requiring its employees to send this information via secure links and servers, and entering into confidentiality and non-disclosure agreements with certain employees.

37.    At the outset of their employment, ExamWorks requires employees to sign an agreement that includes nondisclosure and confidentiality provisions that

survive the termination of their employment relationship with ExamWorks. ExamWorks also requires its employees to comply with its policies and procedures related to the handling of confidential, nonpublic, or sensitive information.

38.    During Rizkallah's employment with ExamWorks, she had access and exposure to and utilized confidential and proprietary information that constituted ExamWorks' trade secrets. As described above, this included, but was not limited to, customer lists, customers' patients' confidential health information, reports, white papers, presentations, risk analysis formulas, business strategies, and other private, confidential and proprietary information.

39.    Without Plaintiff's consent, Rizkallah misappropriated Plaintiff's private, confidential, or proprietary information and trade secrets in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

40.    Rizkallah's conduct as alleged above constitutes misappropriation of ExamWorks' trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

41.    As a direct and proximate result of Defendant's conduct, ExamWorks has suffered, and if the conduct is not enjoined, will continue to suffer, harm.

42.    Due to Rizkallah's unlawful conduct, ExamWorks is entitled to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i). Further, due to the irreparable harm that ExamWorks has suffered

and will continue to suffer as a result of Defendant's unlawful actions, ExamWorks is entitled to a preliminary and permanent injunction (a) prohibiting Defendant from (i) any further acquisition, use or disclosure of ExamWorks' private, confidential, or proprietary information and trade secrets, (ii) offering or providing any services developed, designed, or improved through the use of ExamWorks' trade secrets, and (iii) engaging in any business with ExamWorks' competitors, customers, or potential customers that she would not have but for the misappropriation of ExamWorks' trade secrets; and (b) ordering the disgorgement and the immediate return of all of ExamWorks' confidential information and trade secrets in Rizkallah's possession, custody or control.

43.    ExamWorks requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Rizkallah's computers, personal and business USB and electronic storage devices, smartphones and tablets, email accounts, "cloud"-based storage accounts, and mobile phone call and message history to determine the extent, if any, that ExamWorks' trade secrets were wrongfully taken and/or disseminated to others.

44.    Rizkallah's misappropriation and disclosure of ExamWorks' trade secrets entitles ExamWorks to monetary damages, attorneys' fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B).

45.    Rizkallah's misappropriation of ExamWorks' trade secrets was willful and malicious and was undertaken for the purpose of harming ExamWorks and

therefore it seeks exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

## SECOND CLAIM FOR RELIEF
### (Florida Uniform Trade Secrets Act – Fla. Stat. § 688.00 *et seq.*)

46.    The allegations set forth in paragraphs 7–31 are incorporated by reference as though fully set forth herein.

47.    ExamWorks' private, confidential, proprietary, and trade secret information includes customer lists, customers' patients' confidential health information, reports, white papers, presentations, risk analysis formulas, business strategies, and other private, confidential and proprietary information.

48.    ExamWorks has invested significant time, effort, and resources to develop its private, confidential, proprietary, and trade secret information.

49.    ExamWorks derives independent economic value from the fact that its private, confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. ExamWorks has taken, and continues to take, reasonable measures to keep that information secret and confidential. measures include, but are not limited to, password-protecting this information, limiting the dissemination of information to certain employees, promulgating policies governing access to, and the handling and use of such information, requiring its employees to send this information via secure servers as well as secure links (as-required), and entering into confidentiality and non-disclosure agreements with certain employees.

50. At the outset of their employment, ExamWorks requires employees to sign an agreement that includes nondisclosure and confidentiality provisions that survive the termination of their employment relationship with ExamWorks. ExamWorks also requires its employees to comply with its policies and procedures related to the handling of confidential, nonpublic, or sensitive information.

51. During Rizkallah's employment with ExamWorks, she had access and exposure to and utilized confidential and proprietary information that constituted ExamWorks' trade secrets. As described above, this included, but was not limited to, customer lists, customers' patients' confidential health information, reports, white papers, presentations, risk analysis formulas, business strategies, and other private, confidential and proprietary information.

52. ExamWorks' confidential, proprietary, and trade secret information provides it with competitive advantages that if known would provide commercial or economic value from their disclosure to or use by others.

53. Rizkallah was well aware that ExamWorks treated its customer lists, customers' patients' confidential health information, reports, white papers, presentations, risk analysis formulas, business strategies, and other private, confidential and proprietary information as trade secrets.

54. At all relevant times, Rizkallah had a duty to maintain the secrecy of ExamWorks' trade secrets. However, in violation of this duty and applicable law, Rizkallah downloaded and potentially disclosed that information to others, and by doing so misappropriated ExamWorks' trade secrets.

55.     During her employment with ExamWorks, Rizkallah had access to private, confidential and proprietary information that constituted ExamWorks' trade secrets.

56.     Rizkallah acquired and used ExamWorks' private, confidential, proprietary, and trade secret information through improper means, including, but not limited to, emailing herself numerous of the Company's documents and files without ExamWorks' knowledge or consent. Rizkallah had – and still has – a duty to preserve the secrecy of ExamWorks' confidential information and trade secrets and a duty not to use or disclose them.

57.     Rizkallah's conduct as alleged above constitutes misappropriation of ExamWorks' trade secrets under the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq.*

58.     Based on the foregoing allegations, ExamWorks is entitled to recover from Rizkallah all monetary damages sustained as a result of her misappropriation, including the actual loss caused by the misappropriation and any unjust enrichment to Rizkallah stemming from the wrongful acquisition and use of ExamWorks' valuable trade secrets.

59.     Based on information and belief, and in view of the foregoing allegations, Rizkallah's misappropriation of ExamWorks' trade secrets was – and still is – willful and malicious. Accordingly, ExamWorks should be granted exemplary damages and punitive damages, unjust enrichment damages and attorneys' fees pursuant to Fla. Stat. §§ 688.004–688.005.

60.    Due to the irreparable harm that ExamWorks has suffered and will continue to suffer as a result of Rizkallah's unlawful actions, ExamWorks is entitled to a preliminary and permanent injunction (a) prohibiting Rizkallah from (i) any further acquisition, use or disclosure of ExamWorks' private, confidential, or proprietary information and trade secrets, (ii) offering or providing any services developed, designed, or improved through the use of ExamWorks' trade secrets, and (iii) engaging in any business with ExamWorks' competitors, customers, or potential customers that she would not have but for the misappropriation of ExamWorks' trade secrets; and (b) ordering the disgorgement and the immediate return of all of ExamWorks' confidential information and trade secrets in Rizkallah's possession, custody or control.

61.    ExamWorks has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

62.    The allegations set forth in paragraphs 7–31 are incorporated by reference as though fully set forth herein.

63.    The Agreement between ExamWorks and Rizkallah is a valid and binding contract for which Rizkallah received adequate consideration.

64.    ExamWorks has performed all of its obligations under the Agreement and Defendant Rizkallah has not been excused from performing her obligations.

65.     The Agreement prohibits Rizkallah from publishing, copying, reproducing, disclosing, divulging, or using any of ExamWorks' private, confidential, or proprietary information or trade secrets.

66.     Rizkallah breached the Agreement by publishing, copying, reproducing, disclosing, divulging, and/or using ExamWorks' private, confidential, or proprietary information and trade secrets, including, but not limited to, confidential information regarding customer lists, customers' patients' confidential health information, reports, presentations, risk analysis formulas, and business strategies.

67.     As a direct and proximate result of Rizkallah's breach of the Agreement, ExamWorks has suffered and will continue to suffer damages.

68.     ExamWorks has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ExamWorks requests that judgment be entered against Defendant Rizkallah as follows:

1.     For equitable and injunctive relief to:

    a. enjoin Rizkallah and those acting in concert or participation with her from directly or indirectly, copying, transferring, using or disclosing

ExamWorks' private, confidential, proprietary, and trade secret information;

b. require Rizkallah to immediately return any and all property of ExamWorks, including but not limited to: (i) all ExamWorks' private, confidential, proprietary, and trade secret information including, but not limited to, the files she copied, emailed to her personal email account, and/or downloaded; (ii) all external storage devices and cloud accounts containing ExamWorks' private, confidential, proprietary, and trade secret information; and, (iii) all copies, backups, and duplicates of ExamWorks' electronic data;

c. permit the independent verification by a neutral forensic expert that all private, confidential, proprietary, and trade secret information of ExamWorks has been deleted from Rizkallah's email accounts, electronic storage accounts, computer(s), mobile phone, and other electronic devices; and

d. require Rizkallah to preserve and not destroy any and all evidence relating to this matter, including, but not limited to, documents and/or communications (including any emails, texts or other messages) concerning (i) Rizkallah's employment with or work for ExamWorks hereto, (ii) Rizkallah's contacts and dealings with any of ExamWorks' customers, potential customers, and/or competitors, (iii) Rizkallah's acquisition, disclosure, use or possession of any of

ExamWorks' private, confidential, or proprietary information or trade secrets;

2.  For damages associated with Rizkallah's unlawful actions;

3.  For attorneys' fees and costs incurred herein;

4.  For exemplary damages; and

5.  For such other and further relief as the Court may deem just and proper.

## VERIFICATION

I, Christie Britt, having read the foregoing Verified Complaint, verify under penalty of perjury that the foregoing is true and accurate according to the best of my knowledge, information and belief, pursuant to 28 U.S.C. § 1746.

Executed this 3rd day of February 2025.

_____
Christie Britt

Dated: February 3, 2025

Respectfully submitted,

JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL  32201
Telephone: (904) 638-2655
Facsimile: (904) 638-2656

By: *s/ Brian L. Hayden*
Brian L. Hayden
Florida Bar No. 0058987
Brian.hayden@jacksonlewis.com
Christian G. Clark
Florida Bar No. 1039890
Christian.clark@jacksonlewis.com